Filed 6/14/16  P. v. Trotter CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C079945 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F05851) |
| v. | |
| KYRELL TROTTER, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Kyrell Trotter has filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Finding no arguable error that would result in a disposition more favorable to defendant, we will affirm the judgment.

1

FACTS AND PROCEEDINGS

We provide the following brief description of the facts and procedural history of the case. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

On July 25, 2014, 75-year-old Gail Paolinelli was at home and heard a knock on the door. He opened the door and was immediately hit in the eye and knocked to the floor. He was dizzy and did not have his glasses on, so he had difficulty seeing. Three men in their late 20's entered his home, with their faces covered. One of the men instructed Paolinelli to keep his head down, and the man held a 10-inch shiny object over Paolinelli. The two other men went through everything in Paolinelli's bedroom, and then demanded Paolinelli tell them where his safe was and open it. Paolinelli, who remained on the floor, complied. The men took Paolinelli's jewelry, coins, keys, wallet, checkbook, cell phone, and other miscellaneous items. The men then duct taped Paolinelli's legs, wrists, and mouth, told him not to call the police, and left.

After the men left, Paolinelli went to the bank and closed his account so the men could not use his checkbook. He had no other phone, so he next went to a cell phone store and had his stolen cell phone shut down. He then called 911 from the store and reported the incident.

The police recovered three fingerprints from the duct tape used to tie up Paolinelli. Using an electronic database, a police forensic identification specialist analyzed the prints and determined they belonged to defendant. Prior to trial, the specialist took defendant's fingerprints and confirmed they matched those provided by the database.

Defendant's grandmother, Carlyon Trotter, testified at trial defendant was living with his grandparents and working at Levi Stadium in San Jose, California, at the time of the incident. Neither defendant nor his grandparents had a car, and defendant did not return to Sacramento to visit until December 2014. Although Carlyon testified defendant was at her house on July 25, 2014, she later admitted she was not sure. Defendant's

2

mother, Kristy Pattison, also testified that defendant was living with his grandparents at the time of the robbery, and she did not see him in Sacramento from June 2014 to December 2014.

A jury convicted defendant of robbery in the first degree and found true that he voluntarily acted in concert with two or more other persons in committing the crime. (Pen. Code, §§ 211, 213, subd. (a)(1)(A).)[1] The trial court sentenced defendant to the midterm of six years, with 165 days of presentence custody credit. The trial court imposed a $300 restitution fine (§ 1202.4, subd. (b)), a corresponding parole revocation fine suspended unless parole is revoked (§ 1202.45), a $40 court operations fee (§ 1465.8), and a $30 conviction assessment (Gov. Code, § 70373). Without determining defendant's ability to pay, the trial court also imposed a $10 crime prevention fee (§ 1202.5),[2] a $384.94 main jail booking fee (Gov. Code, § 29550.2), a $64.82 jail classification fee (Gov. Code, § 29550.2), and "[p]robation costs," which we assume is $702 for the cost of the presentence investigation report, as detailed in the abstract of judgment (§ 1203.1b).

---

[1] Undesignated statutory references are to the Penal Code.

[2] When a trial court imposes a section 1202.5 fine, it must also impose $31 in penalties, assessments, and surcharges: (1) a $10 penalty assessment (§ 1464, subd. (a)(1)); (2) a $7 penalty assessment (Gov. Code, § 76000, subd. (a)(1)); (3) a $2 penalty assessment (Gov. Code, § 76000.5, subd. (a)(1)); (4) a $2 state surcharge (§ 1465.7, subd. (a)); (5) a state court construction penalty of $5 (Gov. Code, § 70372, subd. (a)(1)); (6) a $1 DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)); and (7) a $4 DNA state-only penalty (Gov. Code, § 76104.7, subd. (a)). (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1528-1530.) The trial court failed to impose these penalties and surcharges, except for an unspecified "criminal impact fee," which we assume was pursuant to section 1465.7, subdivision (a). This criminal impact fee is not reflected in the abstract of judgment. We shall decline to modify the sentence, since we are conducting a *Wende* review and increasing the imposed penalty would not benefit defendant.

3

## DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and asks us to determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Counsel advised defendant of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed, and we have received no communication from defendant. We have undertaken an examination of the entire record and find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.


       HULL       , Acting P. J.


We concur:


       ROBIE       , J.


       BUTZ       , J.